UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEONARD CARTER,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>          Defendant. | CASE NO. 2:16-cv-00688 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 7; Consent to Proceed Before a United States Magistrate Judge, Dkt. 9). Plaintiff filed an opening brief (*see* Dkt. 12) and defendant filed her response (*see* Dkt. 13). Plaintiff did not file an optional reply brief.

After considering and reviewing the record, the Court concludes that the ALJ did not commit harmful legal error when evaluating plaintiff's Social Security applications.

For example, one of plaintiff's examining doctors expressed concerns regarding malingering, and noted that plaintiff's presentation was not consistent. Dr. Meis noted that plaintiff "clearly has a focus on obtaining benefits, and his level of thought organization and persistence in attempting to obtain benefits appears to be excellent, and are not hindered by thought disorganization or delusional content" (AR. 925). However, in contrast, plaintiff endorsed flagrant delusional content, such as indicating a desire to build a spaceship in order to leave the planet (*id.*). Dr. Meis also noted that plaintiff demonstrated relatively "good performance on the cognitive exam, and good performance on ADLs" (AR. 927).

In addition, plaintiff's alleged social limitations and some of the medical opinions regarding social limitations are inconsistent with plaintiff's presentation to the CDIU investigator, who found that plaintiff "was very neat and organized [and] did not appear to be anxious or uncomfortable and he was confident, down to earth, and easy to talk with" (AR. 616-17).

Therefore, for these and other reasons discussed herein, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, LEONARD CARTER, was born in 1958 and was 49 years old on the alleged date of disability onset of May 31, 2008 (*see* AR. 266-72, 273-78). Plaintiff has some college credits in aviation welding and criminal justice (AR. 695-97). Plaintiff last worked doing telemarketing, and stopped work in 2006 (AR. 334, 700-01). Plaintiff contends that he was fired because he complained about a coworker "who started calling

him all kinds of names . . . ." (AR. 921). At his July 12, 2012 hearing, plaintiff testified that he currently was maintaining a full-credit educational load of 12 credits or more (*see* AR. 56). He attended school Monday through Thursday from 10:00 am to 5:30 pm (*see* AR. 613). At the time of this hearing, plaintiff testified that he had a GPA of 4.0 (AR. 57). On May 8, 2015, plaintiff reported that he "has a two-year welding degree, and is studying electrical engineering" (AR. 613, 921).

According to the ALJ, plaintiff has at least the severe impairments of "paranoid schizophrenia versus paranoid personality disorder versus personality disorder with antisocial, schizotypal, and paranoid traits; depression; a history of substance dependence in remission; left lower extremity impairment/pain; obesity; and hypertension (20 CFR 404.1520(c) and 416.920(c))" (AR. 612).

At the time of the hearing on July 12, 2012, plaintiff was living alone in an apartment (AR. 703-04).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 111-24, 125-38, 142-62, 163-84). Plaintiff's initial hearing resulted in an unfavorable decision by the ALJ and a reversal and remand from the Court (*see* AR. 719-38, 755-71). Following remand, plaintiff failed to appear for his scheduled hearing before Administrative Law Judge Wayne N. Araki ("the ALJ") on July 30, 2015 (*see* AR. 715-18). On February 26, 2016, the ALJ issued a written decision in

which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 606-28).

In plaintiff's Opening Brief, plaintiff claims he is unable to work because of his physical and mental disabilities and that Ms. Cindy Meinecke, A.R.N.P., M.P.H and Dr. Hopfenbeck opined that plaintiff could not work in society (*see* Dkt. 12).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

Plaintiff is proceeding *Pro Se* and challenges generally the ALJ's assessment of his physical and mental limitations (*see* Dkt. 12, pp. 1-2). The Court has liberally construed his pleading. Defendant contends that there is no harmful legal error (*see* Dkt. 13).

**1. Mental complaints and limitations**

    **a. Dr. Peter Meis, M.D., examining psychiatrist**

Plaintiff indicates in his Opening Brief that he "cannot work in society," indicating reliance on opinions from Dr. James H. Hophenback, M.D. and his assistant, Ms. Vanessa Zsandani (Dkt. 12, p.1 (citing AR. 562, 568, 577)). However, as noted by the ALJ, in May, 2015, plaintiff indicated to an examining psychiatrist, Dr. Peter Meis, M.D.,

that he felt as if other people did not like him, but he reported that he nevertheless got along with others, and denied any behavioral problems at school (AR. 923; *see also* AR. 613 (citing B21F)).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

At his most recent psychiatric evaluation, regarding persistence, plaintiff reported to Dr. Meis that "he spends 'endless' hours studying at school" (*id.*). Plaintiff also denied "having psychiatric problems which interfere with chores, shopping, transportation, or with self-hygiene" (*id.*).

Plaintiff reported to Dr. Meis that "he wants to build a space shuttle and use starlight and bounce all over the universe" (*id.*). He indicated that he would be able to

ORDER ON PLAINTIFF'S COMPLAINT - 5

accomplish building his own space shuttle if he only had the funds (*id*.). He indicated that he does not attempt to do telemarketing work again because "white people don't like him," although he admits that he is not applying for work (*id.*). He does not appear to think that there are any other limitations preventing him from performing telemarketing work, and, as noted by the ALJ, plaintiff testified that "he enjoyed selling papers and magazines over the telephone and that he had thought about going into telemarketing business for himself, but lacked the financial resources . . . ." (*see id*.; *see also* AR. 618).

Although Dr. Meis opined that plaintiff "endorsed significant delusional content, [he indicated that he] was not convinced [that plaintiff] was fully invested in what he was talking about" (AR. 924). The psychiatrist noted that plaintiff's "level of though[t] organization and delusional content varied through the interview according to topic," and Dr. Meis indicated he "was not always sure that [plaintiff] was spontaneous in his presentation" (*id.*).

Despite plaintiff's report of a "down" mood, Dr. Meis observed that plaintiff's "affect was euthymic, if slightly discouraged at times, and it was appropriate to content and incongruent with stated mood" (*id*.). Dr. Meis opined that plaintiff's "affective range was fairly normal" (*id.*).

On mental status examination ("MSE"), Dr. Meis observed that plaintiff's remote and recent memory were intact (*id.*). Dr. Meis also indicated that during "the narrative portion of the exam, [plaintiff's] concentration was fair, and the claimant was not easily distracted" (*id*.). Plaintiff performed a simple three step task "easily" (*id*.).

In his discussion/prognosis, Dr. Meis opined that plaintiff "clearly endorses a history of deceitfulness with lack of remorse, and is clearly benefit-seeking" (AR. 925). Dr. Meis opined that plaintiff's psychotic symptoms are atypical. Although plaintiff endorsed flagrant delusional content, Dr. Meis opined that plaintiff "does not appear to be convincingly invested in these beliefs" (*id*.). Dr. Meis also noted that plaintiff's "beliefs themselves are both unusual and vague, and not persistent or pervasive throughout the interview" (*id*.). Dr. Meis noted that when he asked plaintiff to "elaborate on his beliefs, he becomes vaguer" (*id*.). Dr. Meis noted that plaintiff "displays varying level of thought organization, most times being organized and linear . . . ." (*id*.). Dr. Meis noted that varying "level of thought organization during a single presentation is highly atypical" (*id*.). Dr. Meis noted that plaintiff "clearly has a focus on obtaining benefits, and his level of thought organization and persistence in attempting to obtain benefits appears to be excellent, and are not hindered by thought disorganization or delusional content" (*id*.). Dr. Meis opined that going to "outpatient psychiatric care while refusing to take medication generally does not make sense for someone with psychosis and no insight, [and] would be an excellent way of documenting a history of mental illness without exposing yourself to medication side effects, for someone interested in obtaining benefits" (*id*.). Dr. Meis indicated that he had a "concern for malingering," although he noted that it is possible that plaintiff "is both malingering and psychiatrically impaired from a personality standpoint" (*id*.).

Regarding functional limitations, Dr. Meis opined that plaintiff suffers only from mild limitations in cognitive areas, such as understanding and remembering complex

instructions, noting plaintiff's relatively "good performance on the cognitive exam, and good performance on ADLs" (AR. 927). However, regarding social limitations, Dr. Meis opined that plaintiff suffered from various marked limitations, such as plaintiff's ability to interact appropriately with the public, with supervisors, with coworkers, and to respond appropriately to usual work situations and changes in a routine work setting (AR. 928). In support, Dr. Meis opined that plaintiff, socially, was "very inappropriate and offensive," and that he "may become overly fixated on unproductive endeavors, for example, spaceship building" (*id.*).

Noting Dr. Meis's indication of the importance of obtaining collateral information to validate plaintiff's presentation and reported history, the ALJ "ordered a CDIU [Cooperative Disability Investigations Unit] investigation, which was completed in late-2015 and revealed inconsistencies that erode the claimant's" allegations and testimony (AR. 616; *see also* AR. 1053-63). As noted by the ALJ, contrary to the opinions from various doctors and providers "that the claimant was always hostile, angry, and disorganized, [plaintiff] was very receptive when he met the investigator" (*id.*). The ALJ noted that during this encounter, plaintiff "was very neat and organized [and] did not appear to be anxious or uncomfortable and he was confident, down to earth, and easy to talk with" (AR. 616-17). The ALJ noted that plaintiff "was positive and laughed/joked quite a bit throughout the interview [and] stated that he was not working because he was in school" (AR. 617). As noted by the ALJ, plaintiff had been "studying electrical engineering at North Seattle Community College, where he had been attending since

winter quarter 2015 without complaints concerning security, disruption of class, or expulsion" (*id*.).

Regarding his failure to credit fully plaintiff's allegations and testimony, the ALJ found that plaintiff's "documented daily activities and social interaction are inconsistent with his allegations of disabling functional in social deficits" (*id*.). Although plaintiff has not challenged explicitly the ALJ's evaluation of his allegations and testimony, the Court concludes that the ALJ offered clear and convincing reasons based on substantial evidence in the record as a whole for the failure to credit fully plaintiff's allegations of limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)) (If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so"). The Court notes that the ALJ also relied on plaintiff's conviction for welfare fraud when discounting plaintiff's testimony (*see* AR. 615), as well as plaintiff's "ability to fly to California, [which] tends to suggest that the alleged symptoms and limitations may have been overstated, [as] flights on airplanes that take several hours require airport check-ins with luggage and standing in security lines [and] also requires one to interact appropriately with other people in crowded airport terminals and on board the airplane" (AR. 617).

Regarding the medical opinion of Dr. Meis, the ALJ assigned "little weight to Dr. Meis's consultative assessment that the claimant was markedly limited in his ability to interact appropriately with others and respond appropriately to usual work situations and to changes in a routine work setting" (AR. 619 (citing AR. 928)). In doing so, the ALJ

noted Dr. Meis's concerns regarding malingering and plaintiff's history of fraud, as well as Dr. Meis's opinion regarding plaintiff's atypical presentation (*id*.). The ALJ also noted the CDIU investigation which "subsequently revealed inconsistencies that supported Dr. Meis's concerns and diminish the claimant's [allegations of limitations]" (*id*.). Finally, the ALJ relied on his finding that Dr. Meis's opinion regarding social limitations "is also inconsistent with the claimant's ability to interact with peers and authority figures in earning his welding certificate and pursuing his degree in electrical engineering" (*id*.). Based on the record as a whole, the Court concludes that the ALJ provided clear and convincing reasons for his failure to credit fully the opinions from Dr. Meis regarding social limitations. *See Lester*, 81 F.3d at 830.

### b.  Dr. James Hopfenbeck, M.D. and Dr. James Czysz, Psy.D

Plaintiff contends that Dr. Hopfenbeck opines that plaintiff is "severely impaired and would pose a threat to -- at a job" (Dkt. 12, p. 2 (citing AR. 30)). Plaintiff actually is quoting his attorney's opening statement at his previous administrative hearing, held on July 12, 2012 (*see* AR. 30). Nevertheless, Dr. Hopfenbeck opined on July 27, 2011 that plaintiff suffered from marked limitations in his ability to communicate and perform effectively in a work setting with public contact and that he was severely limited in his ability to maintain appropriate behavior in a work setting, noting that plaintiff "would project paranoia; others would feel unsafe, threatened; has assaulted others in recent years" (AR. 434). Defendant contends that the ALJ reasonably declined to rely on the opinions of Dr. Hopfenbeck and Dr. Czysz (Dkt. 13, pp. 6-9).

Dr. Hopfenbeck provided a number of opinions regarding plaintiff's limitations and ability to work (*see* AR. 410, 432-35, 605, 909-15, 931). In addition to the specific limitations already mentioned, in June 27, 2012, Dr. Hopfenbeck indicated that plaintiff's diagnoses include major depression with psychotic features and a personality disorder with paranoid and antisocial features (*see* AR. 605). At that time, he also opined that plaintiff "has no ability to maintain social functioning, is constantly distracted by his obsessional delusions, and has repeatedly deteriorated and decompensated in work settings" (*id.*). On March 26, 2014, he opined that plaintiff had marked limitations in his ability to ask simple questions or request assistance; communicate and perform effectively in a work setting; complete a normal workday and workweek without interruptions from psychologically-based symptoms; as well as severe limitations in his ability to maintain appropriate behavior in a work setting (AR. 911).

In November 2011, Dr. James Czysz, Psy.D., provided a similar opinion to Dr. Hopfenbeck's (*see* AR. 436-42). For example, Dr. Czysz opined that plaintiff suffered from marked limitations in his ability to perform effectively in a work setting with limited public contact and severely limited in his ability to maintain appropriate behavior in a work setting (AR. 439). In his additional remarks, Dr. Czysz noted that in "considering negative impression management, there are some indications that [plaintiff] tended to portray himself in a negative light, although [he opined that] this pattern is relatively mild and does not necessarily render the test results uninterpretable" (AR. 440). Although plaintiff reported "a number of difficulties consistent with a significant depressive experience," Dr. Czysz noted that "there appear to be relatively few

physiological signs of depression," further noting that the "symptom picture appears to be relatively free of changes in energy, appetite, weight, and sleep patterns" (*id.*).

The ALJ discussed the opinions of Dr. Hopfenbeck and Dr. Czysz together, and failed to credit them fully (*see* AR. 619-20). The ALJ found that the doctors' opinions "are inconsistent with the claimant's documented daily activities set forth above" (AR. 620). The ALJ specified that, as "noted by the District Court, at issue is primarily the claimant's social functioning and capacity to interact with others" (*id.*). The ALJ then reviewed the activities of plaintiff which he found to be inconsistent with the opinions from the doctors regarding plaintiff's social functioning:

> The claimant earned a two-year welding degree at Everett Community College in 2014. After he applied for welding jobs but did not get hired, he enrolled in North Seattle Community College to pursue a degree in electrical engineering. The claimant's ability to attend college requires interaction with others (classmates, professors, etc.) and he testified about working with fellow students (July 2012 hearing testimony). His 4.0 GPA (at least at the time of his hearing in 2012), and his ability to go [on to] earn his welding certificate and pursue a degree in electrical engineering, show that he has the ability to interact with a variety of peers and authority figures. He acknowledged that he did not have any behavioral problems at school and the CDIU investigator noted that the claimant was very receptive, down-to-earth, positive, and easy to talk with (internal citations to AR. 923, 1060).

(AR. 620).

The Court concludes that the findings by the ALJ are supported by substantial evidence in the record as a whole. The Court also concludes that the ALJ's rationale for failing to credit fully the opinions of Drs. Hopfenbeck and Czysz is clear and convincing.

For the reason stated and based on the record as a whole, the Court concludes the ALJ did not commit harmful legal error when evaluating the medical evidence regarding plaintiff's mental impairments and limitations.

**2. Physical complaints**

    **a. Ms. Cindy Meinecke**

Although plaintiff contends that his "medical doctor," Ms. Cindy Meinecke, ARNP, MPH, has opined that plaintiff cannot work due to physical ailments from the car accident which occurred on July 29, 1997 (Dkt. 12, p. 1), defendant argues that Ms. Meinecke is a family nurse practitioner, not a medical doctor (Dkt. 13, p. 9). Defendant further argues that "the effects of [plaintiff's] leg condition were previously adjudicated in a 2008 decision affirmed by this court in 2010" (*id*.). Furthermore, defendant contends that "in any event, the ALJ identified inconsistencies between Ms. Meinecke's opinion and other evidence in the record that are more than sufficient to meet the 'germane reason' standard" (*id*. (citation omitted)). Defendant's arguments are persuasive.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, physician assistants, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ

1 may disregard opinion evidence provided by both types of "other sources," characterized
2 by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness
3 for doing so.'" *Turner, supra*, 613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503,
4 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.
5 1996).
6
7 Ms. Meinecke opined that plaintiff was disabled from a car accident in 1997 due
8 to his chronic leg swelling and pain (*see* AR. 390). The ALJ adopted and incorporated the
9 previous written decision from ALJ Alexis with respect to the opinion of Ms. Meinecke,
10 other than a comment about Ms. Meinecke not being acceptable medical source (*see* AR.
11 620). In this previous written decision, ALJ Alexis failed to credit fully Ms. Meinecke's
12 opinion regarding disability with a finding that it "conflicts with the record and with
13 [plaintiff's] activities of daily living as discussed at length above" (*see* AR. 17). ALJ
14 Alexis provided examples, noting that while Ms. Meinecke "opines that the claimant has
15 chronic leg pain and swelling, he helped a friend move stones during his relevant period
16 at issue," also noting that plaintiff exercises by riding a stationary bike, lifting weights,
17 and walking (*see id.* at 17-18). In addition, ALJ Alexis noted that Ms. Meinecke admitted
18 that she had not seen plaintiff since August 2010 (*see* AR. 18 (citing AR. 425)). These
19 findings regarding an inconsistency are based on substantial evidence in the record as a
20 whole (*see* AR. 425, 468 (plaintiff "rides his stationary bike" and goes for walks), 505
21 (lifts weights), 506 (plaintiff reported that he had "been moving stones for friend"), 585
22 (lifting weights and using a stationary bike). The Court also notes that in one of these
23 treatment records, from February 19, 2010, plaintiff reported that "if it keeps on being
24

ORDER ON PLAINTIFF'S COMPLAINT - 14

sunny like this I will start running at the park" and was observed to be "in the best spirits that [the provider] had ever seen" (AR. 505).

The Court also concludes that the finding that these reports from the treatment record are inconsistent with the opinion from Ms. Meinecke regarding disability based on leg pain and swelling is a germane reason for failing to credit fully Ms. Meinecke's opinion. The ALJ did not err.

### b.  Dr. Philip Buenvenida, M.D.

Plaintiff mentions, but does not directly challenge the ALJ's failure to credit fully the opinion from Dr. Buenvenida, however, the Court notes that the ALJ indicated that he gave less weight to the opinion of Dr. Buenvenida versus the opinions of Dr. Merrill and Dr. Bernardez, as the ALJ found that these latter opinions were more "consistent with the claimant's longitudinal treatment history, the objective clinical findings, and his performance on physical examinations set forth above and in Judge Alexis's 2012 decision" (AR. 618). Contrary to the opinion of Dr. Buenvenida that plaintiff was unable to lift more than 10 pounds, as noted above, and as noted in the previous written decision by ALJ Alexis, various activities of plaintiff, such as helping a friend move stones, are not consistent with this opinion, *see supra*, section 2.a (*see, e.g.,* AR. 506 (plaintiff reported that he had "been moving stones for friend")). The Court concludes that the ALJ offered specific and legitimate rationale based on substantial evidence in the record as a whole for failing to credit fully the medical opinion of Dr. Buenvenida.

For the reasons stated and based on the record as a whole, Court concludes that the ALJ did not commit harmful legal error when evaluating the medical evidence regarding plaintiff's physical impairments and limitations.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant the case should be closed.

Dated this 13th day of December, 2016.

J. Richard Creatura
United States Magistrate Judge